## HERRING v. UNITED GAS PUBLIC SERVICE CO. et al. *

### No. 4779.

Court of Appeal of Louisiana. Second Circuit.

March 29, 1934.

Joe B. Hamiter, of Shreveport, for appellants.

John B. Files, Blanchard, Goldstein, Walker & O'Quin, and Wilkinson, Lewis & Wilkinson, all of Shreveport, for appellee.

DREW, Judge.

On January 18, 1922, plaintiff herein conveyed to John Benton French the following described property, to wit: "Two acres evenly off the North side of the Southeast Quarter of the Northwest Quarter (S. E. ¼ of N. W. ¼) and Twelve acres evenly off the South side of the Northeast Quarter of the Northwest Quarter (N. E. ¼ of N. W. ¼), Section 34, Township 233 North, Range 16 West, Caddo Parish, Louisiana," and in said deed all of the minerals and rights were reserved by the said plaintiff. This deed was lost, and on the 5th day of November, 1925, plaintiff executed another deed to the said John Benton French covering said described property, and reserving all of the minerals and rights thereunder. The following provision is stated in said last-mentioned deed: "This deed is made to supply and stand instead of deed heretofore, to-wit: on the 18th day of January, 1922, made by the grantor herein to the grantee, and which said deed is lost or destroyed."

On November 5, 1925, the said John Benton French conveyed said described 14 acres to his wife, Mrs. Fannie Belle French, under a dation en paiement, which said instrument specifically excluded therefrom the sale of minerals and rights, and declared that such had been reserved by plaintiff herein. On December 14, 1928, the said Mrs. Fannie Belle French and John B. French, without the concurrence of plaintiff, executed an oil and gas lease for a term of three years in favor of D. L. Perkins, covering 78 acres owned by Mr. and Mrs. French and also the 14 acres under which plaintiff herein had reserved the minerals. On February 26, 1929, plaintiff, without the concurrence of Mrs. French, executed a co-lessor's agreement in favor of said D. L. Perkins covering the 14 acres described hereinabove. On March 30, 1929, the said Perkins assigned said lease to R. W. Norton, and on October 25, 1929, he assigned co-lessor's agreement to the said Norton. On October 27, 1930, Norton assigned said lease and co-lessor's agreement, in so far as they covered the natural gas rights to the property therein described, to the Texas-Louisiana Production Corporation, and on February 24, 1931, the said Texas-Louisiana Production Corporation assigned said lease and co-lessor's agreement covering the natural gas rights to the United Gas Public Service Company. The United Gas Public Service Company is now claiming the gas rights to said 14 acres under said lease and co-lessor's agreement, and the said R. W. Norton is claiming the oil rights under said lease and co-lessor's agreement to said 14 acres. On October 18, 1929, plaintiff sold one-half of the minerals under said 14 acres to E. H. Hall. Hall, on July 3, 1930, sold one-eighth of said minerals to J. S. Slack and Conway Stroud, and on November 17, 1930, he sold three-eighths of said minerals to J. K. Wadley and Alma B. Brown.

No rentals have been paid to plaintiff or his assignees on said 14-acre tract, under said oil and gas lease and co-lessor's agreement, or otherwise, since prior to or during February, 1930.

On or about January 13, 1931, the United Gas Public Service Company, or its assignor, completed a producing gas well in the S. W. ¼ of N. W. ¼ of said section, same being on the land covered by said lease, but which was owned by Mr. and Mrs. French. No royalties whatever have been paid to plaintiff or his assignees on the production and sale of gas from said well.

*Rehearing denied May 4, 1934.

Plaintiff, on August 31, 1932, made written demand on said United Gas Public Service Company for a cancellation of said lease and co-lessor's agreement to the extent of said 14-acre tract, and said United Gas Public Service Company has failed and refused to make such cancellation. No well has ever been drilled on the 14-acre tract involved herein. All of the co-owners of the minerals under said 14-acre tract have been made party defendants herein, and the said Mrs. French, the United Gas Public Service Company, R. W. Norton, and W. M. Levy, clerk of court, have also been served and cited herein. J. S. Slack, Conway Stroud, J. K. Wadley, and Alma B. Brown, co-owners of the minerals under the 14-acre tract, have answered the petition and have joined plaintiff in his demands; consequently, when we refer to plaintiff herein, such also includes the said co-owners, and when reference is made to defendants, such means R. W. Norton, United Gas Public Service Company, and Mrs. Fannie Belle French.

Plaintiff filed this suit and alleged the above facts, and prayed as follows:

"Wherefore, petitioner prays that a curator ad hoc be appointed to represent the said J. K. Wadley and Alma B. Brown, non-residents herein; that all of the parties hereto be duly served and cited according to law to appear and answer this petition, and that after due and legal proceedings had, there be judgment herein in favor of petitioner, John H. Herring, and against said defendants, United Gas Public Service Company, R. W. Norton, Mrs. Fannie Belle French, J. S. Slack, Conway Stroud, J. K. Wadley, Alma B. Brown and W. M. Levy, Clerk of Court, recognizing petitioner as the owner of one-half of the oil, gas and other minerals and rights in and under and that may be produced from said 14-acre tract, adjudging and decreeing said oil and gas lease and said co-lessor's agreement lapsed and forfeited insofar as said 14-acre tract is concerned, and ordering the same cancelled and erased to that extent from the conveyance records of Caddo Parish.

"That there be further judgment herein in favor of petitioner and against said defendant, United Gas Public Service Company, for the sum of $1000.00, as attorney's fees and for all costs of this suit.

"In the alternative, and only in the event the court finds that said lease and co-lessor's agreement have not lapsed and been forfeited, petitioner prays for judgment ordering said United Gas Public Service Company to account to him for his proportional part of all royalties due on the gas utilized and sold from said completed well, and of all rentals due on said premises, under the provisions of said lease and co-lessor's agreement, reserving to him the right to hereafter claim royalties on the gasoline produced, utilized and sold from said well."

The defendants filed pleas of prescription of ten years, pleas of res judicata, and exceptions of no cause of action. The plea of res judicata is as follows:

"I. That this plea of res judicata is filed without in any manner admitting that John H. Herring, plaintiff in this cause, has any interest whatsoever in the property described in plaintiff's petition, and is filed without prejudice to any other exceptions heretofore filed in this cause.

"II. In Suit No. 56766 on the docket of the First Judicial District Court in and for Caddo Parish, Louisiana, entitled 'United Gas Public Service Company v. J. B. French, et al,' your defendant, as the holder of the mineral lease referred to in paragraph 4 of plaintiff's petition herein, filed an interpleader suit, and deposited in the registry of this honorable court such rentals and/or royalties as had accrued on account of the producing gas well referred to in paragraph 10 of plaintiff's petition, and in said suit John H. Herring, plaintiff in this cause, was made a party defendant and was personally cited to appear and answer said suit and to assert such rights as he might have to an accounting for the rentals and/or royalties accruing and to accrue on account of said gas well and said mineral lease.

"III. That as shown by plaintiff's petition, there is only one producing gas well on said lease.

"IV. That in said suit No. 56766, the issue was squarely raised as to the right of John H. Herring to participate in any rentals and/or royalties on account of the one producing gas well on said mineral lease, and after due proceedings had, a judgment was rendered in said suit decreeing that John H. Herring had no right, claim or interest to the rentals and/or royalties on account of said gas well and said lease, all of which is more fully shown by the record in said suit No. 56766 on the docket of this honorable court, which is made part hereof by reference.

"V. Your defendant shows that said judgment was read, signed and filed in open court on March 9, 1932, and that the plaintiff herein, John H. Herring, has not appealed from

said judgment in any way, and your defendant shows that the said judgment operates as res judicata against said John H. Herring in his demand for an accounting as set forth in the present suit.

"Wherefore, your defendant prays that this plea of res judicata be sustained, and accordingly that this suit be dismissed at plaintiff's cost; for all orders necessary for full, general and equitable relief in the premises, and for costs."

Defendants answered denying the rights of plaintiff to have the lease canceled; admitted the facts as above set forth and alleged in plaintiff's petition. They further answer as follows:

"* * * and defendant further shows that all rentals were paid to plaintiff until gas in paying quantities was produced, after which time defendants United Gas Public Service Company deposited into court the lieu royalties as provided in the lease and made plaintiff a party defendant to said interpleader; and that plaintiff was personally cited. * * *

"19. Further answering defendant shows that D. L. Perkins was acting as defendant's agent in obtaining the lease from Mrs. Fannie Belle Herring French and the co-lessor's agreement from plaintiff; and that the purpose of the co-lessor's agreement obtained from plaintiff was to make the entire 92-acre lease an indivisible lease the same as though J. H. Herring had joined in the execution of said lease with Mrs. Fannie Belle Herring French; and that production from part of said 92-acre lease would be sufficient to keep the entire lease in existence, all to the knowledge of plaintiff; and that plaintiff has at all times up to just previous to the filing of this suit led defendant to believe that said lease, together with the co-lessor's agreement was to have the effect as contemplated.

"20. That the well drilled by appearer upon a portion of the lease executed by Mrs. French was what is known as a wildcat well and was drilled in unproven territory at a cost in excess of $80,000.00.

"21. That defendants would not have drilled said well unless they had an indivisible lease on the entire 92 acres described in paragraph 2 of plaintiff's petition.

"22. That plaintiff owned additional property in the same section in which the well was drilled by appearer and was able to sell royalties there on account of the drilling of said well.

"23. That plaintiff has always led defendant to believe that the 92-acre lease, together with the co-lessor's agreement executed by plaintiff, constituted an indivisible obligation and that production on a part would keep the entire lease in effect; and that acting upon this assumption the well was drilled by defendant as set forth above; that plaintiff is now estopped from contending that the co-lessor's agreement was merely a separate lease and that the lease from Mrs. French, together with the co-lessor's agreement, does not constitute an indivisible obligation and one lease, which estoppel is specially pleaded.

"24. That the United Gas Public Service Company in suit No. 56766, entitled United Gas Public Service Company v. J. B. French, et al, deposited into court the lieu royalties accruing from the well drilled by appearer and interpleaded plaintiff and all parties having a possible interest in said lieu royalties.

"25. That plaintiff did not make any appearance in said suit although personally served; and that defendant is informed that plaintiff failed to make said appearance upon advice of counsel, in order to form a basis for this suit upon the ground that he had been paid no royalties.

"26. That judgment was rendered in said suit decreeing the payment of the lieu royalties to parties other than plaintiff.

"27. That if plaintiff had made an appearance in said suit or had actually made a claim in said suit that he was entitled to a portion of the royalties and a judgment had been rendered therein decreeing him entitled to a portion of the royalties he would have continued to receive such royalties from United Gas Public Service Company and J. H. Herring is now estopped to claim that he has not received his full share of royalties, which estoppel is specially pleaded."

Defendant Mrs. French specially denied the right of plaintiff to share in the royalties from the gas well produced on her land. On these issues the case was tried below and resulted in the following judgment:

"It is ordered, adjudged and decreed that plaintiff's demands for the cancellation of the lease and co-lessor's agreement involved herein are rejected.

"It is further ordered, adjudged and decreed that there be judgment herein recognizing John H. Herring, J. S. Slack, Conway Stroud, Alma B. Brown and J. K. Wadley to be the owners of the oil, gas and other minerals in and under and that may be produced

from the following described lands situated in Caddo Parish, Louisiana, to-wit:

"14 acres of land in the E. ½ of the N. W. ¼, Section 34, Township 23 North, Range 16 West, in Caddo Parish, Louisiana, lying and being situated just south of 14 acres of land deeded to Mrs. Rosa Howard by Mrs. Fannie B. French, Mrs. Maggie McLeod and J. H. Herring, on the 6th day of December, 1920, the same being also described as 2 acres evenly off the North side of the S. E. ¼ of the N. W. ¼ and 12 acres evenly off the South side of the N. E. ¼ of N. W. ¼, all in said section, township and range.

"Said ownership being subject to a co-lessor's agreement executed by John H. Herring in favor of D. L. Perkins on the 26th day of February, 1929, and a lease executed by Mrs. Fannie B. French and J. B. French in favor of D. L. Perkins on the 14th day of December, 1928, both of which are recorded in the records of Caddo Parish, Louisiana, and said ownership being in the following proportions, to-wit:

"John H. Herring, ½
"J. S. Slack, 1⁄16
"Conway Stroud, 1⁄16
"Alma B. Brown, 3⁄16
"J. K. Wadley, 3⁄16 ·

"It is further ordered, adjudged and decreed that there be judgment herein in favor of John H. Herring, and his assignees, J. S. Slack, Conway Stroud, Alma B. Brown and J. K. Wadley and against the United Gas Public Service Company, R. W. Norton and Fannie Belle French, recognizing plaintiff and his said assignees as the owners in the proportions set forth hereinabove of a 14⁄92 interest in and to the ⅛ oil, gas and other mineral royalties specified in said lease executed by Mrs. Fannie Belle French and J. B. French in favor of D. L. Perkins aforesaid, which said lease covers the following described property: S. W. ¼ of N. W. ¼ and S. E. ¼ of N. W. ¼ and the South 12 acres evenly off the South side of the N. E. ¼ of N. W. ¼, and 2 acres evenly off the North side of the S. E. ¼ of the N. W. ¼, all in Section 34, Township 23 North, Range 16 West, Caddo Parish, Louisiana, containing 92 acres, more or less.

"It is further ordered, adjudged and decreed that the United Gas Public Service Company is hereby ordered to account to the said John H. Herring, J. S. Slack, Conway Stroud, Alma B. Brown and J. K. Wadley for their proportional parts of all royalties produced from the completed well on the said described premises since August 31, 1932.

"It is further ordered, adjudged and decreed that all pleas of prescription, exceptions of no cause or right of action and pleas of res judicata filed herein by the defendants, United Gas Public Service Company, Mrs. Fannie Belle French and R. W. Norton, are hereby overruled.

"It is further ordered, adjudged and decreed that all costs of this suit be paid by the United Gas Public Service Company and R. W. Norton."

From this judgment the plaintiffs have appealed, and defendants have answered the appeal praying that all that part of the judgment which is against them be reversed and that plaintiff's demands be dismissed in toto.

Since our conclusion in the case on its merits is entirely with the defendants, we prefer to dispose of the case on its merits.

On December 14, 1928, Mrs. Fannie Belle Herring French executed to D. L. Perkins, who is the author in title of defendants herein, a mineral lease covering the entire 92 acres which included the 14 acres under which John H. Herring, one of plaintiffs, and author in title of the other plaintiffs, owned the minerals. On February 22, 1929, before the said John H. Herring had sold any of the mineral rights in the 14 acres, he executed the following instrument to D. L. Perkins:

"State of Louisiana, Parish of Caddo

"Know all men by these presents: That, whereas, Mrs. Fannie Belle Herring French, aided, authorized and joined by her husband, J. B. French, of Vivian, Louisiana, has granted to and executed in favor of D. L. Perkins, a single man, of Shreveport, Louisiana, a certain oil and gas lease, dated December 14, 1928, covering and affecting the following described land, to-wit: S. W. ¼ of N. W. ¼ and S. E. ¼ of N. W. ¼ and the South 12 acres evenly off the South side of the N. E. ¼ of the N. W. ¼, all of Section 34, Township 23 North, Range 16 West, containing 92 acres, more or less, situated in Caddo Parish, Louisiana.

"Now, therefore, taking full cognizance of the terms, conditions, recitals and stipulations contained in said oil and gas lease and wishing to join and concur in said oil and gas lease as a co-lessor, I, John H. Herring, husband of Lela A. Williams, of Vivian, Louisiana, in consideration of the sum of $14.00,

cash in hand paid, and other adequate and valuable considerations, receipt of which is hereby acknowledged, and of the covenants and agreements in said oil and gas lease contained, do hereby join and concur in said oil and gas lease as co-owner of the minerals in and under the following described land, to-wit: Two acres evenly off the North side of the S. E. ¼ of the N. W. ¼ and twelve acres evenly off the South side of the N. E. ¼ of N. W. ¼, being a 14-acre strip lying east and west in the East Half of the N. W. ¼ lying South of and joining a similar 14-acre strip owned by Mrs. Rosa Howard; and as such co-owner, and as a co-lessor, the said oil and gas lease is hereby recognized, ratified and confirmed as to all terms, conditions, recitals and stipulations therein contained just as if same were set out fully and incorporated herein, it being the intention that this instrument shall express full concurrence as a co-lessor in said lease and shall have the same effect as signing my name to said oil and gas lease as co-lessor at the time of its execution.

"It is further understood that, in addition to my proportion of the down payment recited in said oil and gas lease, receipt of which is hereby acknowledged, rentals and royalties provided in said lease, insofar as the land designated herein as land in which I own an interest in the minerals is concerned, shall be payable to me in the proportion of my interest in the minerals bears to the whole of the minerals in and under such designated land.

"Witness my signature on this the 26th day of the month of February, 1929.

"[Signed] J. H. Herring.
"Witnesses:
"[Signed] J. W. Land
"[Signed] J. L. Land"

Mrs. French did not join in this instrument and never at any time recognized that John H. Herring had any interest in the minerals under any part of the 92 acres which she owned in fee. She never at any time agreed for John H. Herring to become a co-lessor with her, nor did she ever agree or consent to the royalties being proportioned between her and John H. Herring. To the contrary, she contended always that John H. Herring was not entitled to any rent or royalties on the 92 acres of land. There is nothing in the so-called co-lessor's agreement to indicate that John H. Herring was to share in the royalties due from a gas or oil well produced on any other part of the 92 acres, other than his 14-acre interest which is

specifically described. The so-called "co-lessor's agreement" is clear and unambiguous, and by its very language John H. Herring ratified and confirmed the lease executed by Mrs. French on the 92 acres, including the 14 acres under which he owned the minerals. In said instrument he accepted all the conditions, recitals, and stipulations contained in the lease from Mrs. French to D. L. Perkins, which lease contains the stipulation that if a well is drilled and made a producer of oil or gas on this 92 acres of land (not some particular part of it, but on *any* part of it), the lease shall remain in effect as long as such production continues.

The said ratification contract (called "co-lessor's agreement" is a lawful contract with a good consideration. It is not intimated that such a contract is forbidden by law or is contrary to public policy or good morals. It is very binding on John H. Herring and those who acquired under him thereafter. It therefore follows that the judgment of the lower court, in so far as it rejected the main demand of plaintiffs for cancellation of the lease on the 14 acres, is correct.

Attorney for plaintiffs in brief has the following to say on the alternative demand:

"At the outset we wish to frankly state to the court that even though the lower court gave judgment in favor of our alternative demand, we believe that such judgment is clearly erroneous under the evidence. Only two judgments are possible in this case—either the cancellation of the lease and co-lessor's agreement under our main demand, or the dismissal of plaintiffs' suit, thereby allowing defendants, United Gas Public Service Company and R. W. Norton, to indefinitely hold the mineral lease rights on the 14 acres without proper compensation and allowing Mrs. French to eventually acquire all of plaintiffs' mineral interest by the prescription of 10 years. We say that plaintiff is not entitled to judgment on his alternative demand awarding him royalties from the well on Mrs. French's land for the reason that Mrs. French has never consented in any way to his having an interest in her minerals. She was not a party to Mr. Herring's so-called co-lessor's agreement or ratification instrument, nor has she ever conveyed any interest to him. Nor was Mr. Herring a party to her original lease. The fact that one attempts to ratify a lease given by another party does not give the ratifying party an interest in the property covered by the lease."

We fully agree with counsel. The judgment in plaintiff's favor on the alternative

demand is clearly erroneous. Since plaintiff has abandoned his claim under the alternative demand, we will go into no further discussion of it other than to refer to a decision handed down this day by us, entitled United Gas Public Service Company v. J. D. Eaton et al., 153 So. 702, on which we passed on this same question, wherein we held, unless the contract of lease specifically provided for it, the owner of minerals under one 40 acres could not participate in the royalties from a producing well on another 40 under which he owned no minerals, although both forties were leased by one instrument covering the entire 80 acres, at one and the same time. In fact, we held that the right to participate in the royalties from a well on property under which one held no minerals was governed entirely by the contract between the lessors, even though it was a joint lease.

It therefore follows that the judgment of the lower court is reversed, and the demands of plaintiffs rejected, at their costs, in both courts.

MILLS, J., concurs.